UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LESBIA M GIRON CARRETO de CARDONA,

Petitioner,

v.

JULIO HERNANDEZ, et al.,

Respondents.

Case No. C26-3192-SKV

ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Lesbia M. Giron Carreto de Cardona is a citizen of Guatemala who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1, ¶ 1. Through counsel, she filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which she challenges the constitutionality of her redetention on August 14, 2026. Dkt. 1. She seeks immediate release from custody and related relief. *Id.* at 11.

The Petition is supported by Petitioner's declaration and its English translation, Dkt. 1-2, along with materials from Petitioner's alien file ("A-file"), most of which also appear in the Respondents' submissions. Respondents filed a return, Dkt. 5, together with declarations from Deportation Officer Kurtis Reed, Dkt. 6, and Special Assistant U.S. Attorney Lawrence Van

Daley, Dkt. 7. The latter attests to the authenticity of attached exhibits from Petitioner's A-file. Dkt. 7-1 *et seq*. Petitioner filed a traverse in reply. Dkt. 8.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition, Dkt. 1, for the reasons set forth below.

## I. BACKGROUND

Petitioner, a native and citizen of Guatemala, applied for admission into the United States on November 23, 2024, at the Bridge of the Americas in El Paso, Texas. Reed Decl., ¶ 3.[1] After expressing a fear of return to Guatemala and indicating her intention to apply for asylum, she was processed as an "Expedited Removal Pending Credible Fear Interview." Reed Decl., ¶ 3; Dkt. 7-4 at 3 (Form I-831). United States Citizenship and Immigration Services ("USCIS") found her to have a credible fear of return. Dkt. 7-4 at 3-4 (Form I-831). On December 15, 2024, USCIS issued a Notice to Appear ("NTA") under Section 212(a)(7)(A)(i)(I)[2] of the Immigration and Nationality Act ("INA"), noting the finding of credible fear and charging her with inadmissibility under the INA because she lacked valid entry documents. Dkt. 7-1 at 2 (NTA). On December 27, 2024, she was released from detention for a one-year parole period pursuant to Section 212(d)(5) of the INA. Dkt. 7-2 at 2; Reed Decl., ¶ 6. She was placed in Alternative to Detention ("ATD") electronic wrist monitoring as part of her release. Reed Decl., ¶ 6. In May 2025, she applied for asylum and withholding of removal, and she requested and was granted leave to relocate from El Paso, Texas to Bellevue, Washington. Dkt. 7-4 at 4; Reed Decl., ¶ 7. During the ATD period, Petitioner reports that she had technical difficulties with the

---

[1] Declaration of Kurtis Reed, ("Reed Decl."). Dkt. 6.

[2] 8 U.S.C. § 1182(a)(7)(A)(i)(I).

wrist monitors, including overheating, charging improperly, and discharging. Petitioner Decl., ¶ 5.[3] This caused her to contact authorities to have the monitor changed more than once. *Id.*

On May 27, 2026, the Seattle ICE office released Petitioner under an Order of Release on Recognizance ("OREC"). Dkt. 7-3 at 2-3. Respondents indicate that the OREC included additional conditions of electronic monitoring via a GPS ankle monitor "due to an extensive history of violations of her release terms—including a total of 35 missed callbacks, missed biometric check-ins." Reed Decl., ¶ 8. Less than three months later, on August 14, 2026, ICE Enforcement and Removal Operations ("ERO") took Petitioner into custody during her routine reporting to the ERO office after it discovered evidence of the 35 missed callbacks and check-ins:

> ERO performed routine checks and discovered that Petitioner had accumulated thirty-five violations of the ATD program terms, including twenty within the past year, which consisted primarily of biometric check-in failures and missed tracker callbacks" and detained Petitioner on this basis during her routine reporting to the ERO office.

*Id.* ¶ 9; *see also* Van Daley Decl. Ex. 5 (list of missed check-ins and callbacks).[4] Petitioner has been in detention ever since. Petitioner Decl., ¶ 9. Petitioner requested that an Immigration Judge review the custody determination. Van Daley Decl., Ex. 6 (Notice of Custody Determination). The Tacoma Immigration Court "issued a notice of a Master hearing scheduled for September 29, 2026," the disposition of which is not in the record before this Court. Reed Decl., ¶ 10. Petitioner has no criminal history. Petitioner Decl., ¶ 9; Van Daley Decl., Ex. 7 (Form I-213).

---

[3] Declaration of Lesbia Maricela Giron Carreta de Cardona ("Petitioner Decl."). Dkt. 1-2.

[4] Declaration of Lawrence Van Daley ("Van Daley Decl."), Dkt. 7.

## II. DISCUSSION

Petitioner brings one claim: that Respondents violated her Fifth Amendment right to due process when they redetained her without first providing pre-deprivation notice or an opportunity to be heard. Dkt. 1 at 11. Petitioner emphasizes that Respondents did not provide written notice explaining the basis for revocation of her release before redetaining her, nor did they assess whether she presented a flight risk or a danger to the community or provide any other hearing before a neutral decisionmaker. Dkt. 1 at 7. She seeks immediate release from detention. *Id.* at 12. She further requests that Respondents be permanently enjoined from redetaining her "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that she is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks," as well as attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). *Id.*

Respondents ask the Court to deny the requested relief, arguing that Petitioner remains an arriving applicant for admission under 8 U.S.C. § 1225(b)(1)(B)(ii), which mandates her detention. Dkt. 5 at 2. More specifically, Respondents state that

> 8 U.S.C. § 1225(b)(1)(B)(ii) applies to an applicant for admission whom an officer processes for expedited removal and who later establishes a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). After a positive credible-fear finding, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Petitioner followed that path.

*Id.* at 4. Respondents cite to a decision of the Board of Immigration Appeals ("BIA") for the proposition that "an applicant for admission who is released on parole and whose parole later ends returns to detention under 8 U.S.C. § 1225(b) and is not eligible for release on bond under 8 U.S.C. § 1226(a)." *Id.* at 5 (citing *Matter of Q. Li*, 29 I. & N. Dec. 66, 67 (B.I.A. 2025)).

Respondents also argue that her release on OREC did not change her status,[5] but was merely a discretionary decision not to detain her that was subject to revision at any time, and that her detention comports with due process. *Id.* at 7.

**A. Statutory basis for detention and availability of due process**

The Respondents argue that Petitioner must be considered mandatorily detained under 8 U.S.C. § 1225(b)(1)(B)(ii), unless she is released on parole. Under that provision, "[i]f the officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii) (omission added).

Petitioner argues—and the Respondents do not dispute—that she was provided no process at all before her redetention: no notice, no hearing, no assessment before a neutral decisionmaker of the basis for redetention or her individual risk of flight or danger to the community. Their dispute reduces to this: whether she was entitled to any due process at all before being redetained.

This court has determined that even an individual subject to mandatory detention under 8 U.S.C. § 1225(b) may be entitled to some degree of due process—informed by and consistent with any process due to her under the relevant statutory scheme—before redetention and revocation of humanitarian parole. *Torres*, 2026 WL 145715 at *6. In *Torres v. Hermosillo*, this court reasoned that "humanitarian parole can establish the same kinds of liberty interests described in *Morrissey*." *Id.* at *5 (citing *Morrissey v. Brewer*, 408 U.S. 471 (1972)). In doing

[5] In traverse, Petitioner challenges the assertion that the OREC did not change her status, arguing that this Court should look to her individual factual circumstances to determine whether she is now detained under 8 U.S.C. § 1225 or § 1226(a). *See* Dkt. 8 at 10 and cases cited therein. This fact-intensive argument is not well developed in the briefing, and it is not necessary to reach this argument because, as discussed herein, she was entitled to some degree of due process even under 8 U.S.C. § 1225. *See Torres v. Hermosillo*, 2:25-CV-02687-LK, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026).

so, the Court emphasized that, although those to whom the entry fiction[6] applies have only those rights to admission that Congress has provided by statute, "the Supreme Court has never applied the entry fiction doctrine to a case like this—to constitutionally justify the *detention* of a person living freely, for years, within the United States." *Id.* at *4. The *Torres* reasoning is consistent with a recent decision by the Ninth Circuit, distinguishing due process rights associated with admission from those associated with detention: "[u]nlike the political branches' plenary power over admission, the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century." *Padilla*, 2026 WL 2822044 at *16 (internal footnote omitted).

In *Torres*, the Court determined that the petitioner, who was subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) and paroled into the United States, experienced both a statutory violation and a due process violation when ICE revoked her parole without notice. 2026 WL 145715, at *6. Nothing here compels a different result. Respondents' reliance on *Khan v. Hernandez*, 26-CV-01697-TMC, 2026 WL 1893716, at *2 (W.D. Wash. July 1, 2026), for the proposition that this court has rejected a similar due process challenge is misplaced. *Khan* did not consider whether the manner of redetention violated petitioner's constitutional rights.[7] *Id.* Additionally, although Respondents justify the revocation of Petitioner's OREC by

[6] "Today, the entry fiction encompasses those apprehended at or very near a point of entry and then either paroled into the United States or detained in the United States pending a determination of their admissibility. Such individuals are 'treated as if stopped at the border' with respect to certain legal rights." *Padilla v. United States Immigration & Customs Enf't*, 24-2801, 2026 WL 2822044, at *13 (9th Cir. Sept. 21, 2026) (citations omitted). When the entry fiction applies, a noncitizen may "'*physically* be allowed within its borders pending a determination of admissibility, [but] such aliens are *legally* considered to be detained at the border and hence as never having effected entry into this country.'" *Id.* at 12.

[7] Khan "argue[d] for the first time in his traverse that in arresting and detaining him without a prior hearing, ICE violated his rights under the Due Process Clause of the Constitution." *Khan*, 2026 WL 1893716 at *3. Accordingly, the Court did not address that undeveloped argument. *Id.* The issue not reached by the *Khan* court is the sole question before this Court—whether the manner of Petitioner's redetention violated the Due Process Clause.

reference to instances in which Petitioner failed to comply with biometric monitoring and check-ins, this justification rings hollow when considering Respondents' assertion that those same lapses actually *informed* the terms of her OREC issued only three months earlier and that Respondents submit no evidence of any post-OREC lapses. *See* Reed Decl., ¶¶ 8-9; Van Daley Decl. Ex. 5.

**B. *Mathews* and Due Process**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' . . . interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (omissions added). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Courts in this District apply the *Mathews* framework in cases challenging the lawfulness of a noncitizen's redetention. *See, e.g., E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases). Separate from any statutory reason to detain Petitioner, the government remained "obligat[ed] to effectuate the detention in a manner that comport[ed] with due process." *Id.* at 1322 (citation omitted).

*1. Petitioner had a liberty interest in remaining free.*

As in *Torres*, "the statutory framework does not entitle arriving noncitizens to unconditional or perpetual parole, but it does provide . . . procedural protections . . . .upon revocation." *Torres*, 2026 WL 145715 at *7 (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2))(omission added). When paroled, a "parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions[,]" and the liberty interest thereby granted is, though indeterminate, "valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal." *Morrissey*, 408 U.S. at 482.

After being released on parole and then on OREC, Petitioner reunited with her husband and sisters and began building a life in Bellevue, Washington, pending decision on her asylum application. Petitioner Decl., ¶ 1, 9. Those actions were only made possible because of her freedom, the revocation of which was entitled to due process. *See Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("While the temporary detention of non-citizens may sometimes be justified by concerns about public safety or flight risk, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process[.]"). Petitioner's liberty interest in remaining free was unquestionably deprived by her arrest and redetention challenged here. Accordingly, the first factor weighs in Petitioner's favor.

*2. There was a high risk of erroneous deprivation.*

As for the second *Mathews* factor, the Court finds there was a high risk of erroneous deprivation when Petitioner, having been released to live the United States, was redetained without notice or an opportunity to be heard and without the Government first considering whether she posed a risk of absconding or a danger to the community. Respondents contend that

the risk of erroneous deprivation is low because the factual basis for custody is undisputed: her parole expired and her OREC was revoked. Dkt. 5 at 9. This argument ignores the fact that Respondents also state that her OREC was revoked because of missed biometric check-ins and callbacks. Reed Decl., ¶ 9. Petitioner argues that her account as to those lapses conflicts with Respondents' account, Dkt. 8 at 3-4, and this record contains no evidence of missed check-ins after the OREC was issued in May of this year. *Id.*; *see also* Van Daley Decl., Ex. 5. In short, there are unanswered questions of fact as to the reasons for Petitioner's redetention, and this alone suggests that the procedures used here were marked by a high risk of erroneous deprivation.

The *Mathews* analysis looks to the risk of an erroneous deprivation of the relevant interest through the governmental procedures used, and the probable value, if any, of additional or substitute safeguards. *Mathews*, 424 U.S. at 335. When the Government released Petitioner on an OREC in 2026, the issuing officer must have first necessarily found that her release "would not [have] pose[d] a danger to property or persons, and that [she was] likely to appear for any future proceeding." *See* 8 C.F.R. § 236.1(c)(8). The unilateral decision to then revoke that release without meaningful and individualized consideration of flight risk or danger also comes with a high risk of erroneous deprivation. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases).

The revocation of Petitioner's OREC was untethered from any individualized consideration of factors that might bear on the likelihood of Petitioner's appearance at future court dates. The circumstances of Petitioner's redetention show there was a high risk of erroneous deprivation and that additional, pre-deprivation process would have been valuable in ensuring such error did not occur. Providing notice and a pre-deprivation hearing would have

provided an opportunity for Petitioner to explain or challenge the factual bases for her redetention. This factor weighs in favor of Petitioner.

*3. The Government's interest did not justify forgoing pre-deprivation process.*

Finally, the Government's interest in redetaining Petitioner without notice or an opportunity to be heard was low. The Respondents argue that 8 U.S.C. § 1225(b) compels her detention unless she is paroled and that

> [t]he government also has an interest in ending a discretionary release without first converting that release into a criminal bail hearing. A rule that every return to custody requires a pre-deprivation hearing at which the government must prove flight risk or danger by clear and convincing evidence, and must negate every alternative to detention, would replace that scheme with a model Congress did not enact.

Dkt. 5 at 10. This argument as to governmental interest in not adding cumbersome additional process to the scheme approved by Congress is undermined by the fact that "the government did not follow the procedures required by its own regulations to terminate" Petitioner's parole or OREC. *See Torres*, 2026 WL 145715, at *7 (citing 8 C.F.R. § 212.5(e)(2)(1) and 8 U.S.C. § 1182(d)(5)(A)).

The Government certainly has an interest in immigration enforcement, which includes, for example, ensuring noncitizens appear at future proceedings, protecting the public from dangerous noncitizens, prompt execution of removal orders, and preventing noncitizens from "remaining in the United States in violation of our law." *Demore v. Kim*, 538 U.S. 510, 518 (2003); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). However, Respondents do not articulate an interest advanced by Petitioner's redetention that would have been undermined by first allowing her to challenge the factual basis for her OREC revocation.

In sum, the *Mathews* factors favor Petitioner. Given the liberty interest at stake, the high risk of erroneous deprivation, and the governmental interest alleged, "providing effectively no

pre-detention process to Petitioner[] here was constitutionally deficient." *Aucatoma v. Hernandez*, C26-1253-SKV, 2026 WL 1265541, at *8 (W.D. Wash. May 8, 2026); *see also Subham v. Noem*, C26-292-SKV, 2026 WL 497101, at *4 (W.D. Wash. Feb. 23, 2026). Habeas relief, and specifically release from immigration custody, is the appropriate and constitutionally required remedy. *See Aucatoma*, 2026 WL 1265541, at *8 (and the cases cited therein).

**C. Injunctive Relief**

As noted above, Petitioner also seeks permanent injunctive relief barring her redetention during the pendency of her removal proceedings absent written notice and a hearing before a neutral decisionmaker where the government would bear the burden by clear and convincing evidence. Dkt. 1 at 12. Petitioner's factual basis and legal arguments for this request are undeveloped and conclusory, and the request will be DENIED on that basis without prejudice. Nothing prevents Petitioner from seeking habeas relief in the future, should it become necessary.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part Petitioner's habeas petition (Dkt. 1) and ORDERS that Petitioner be RELEASED from immigration detention within 24 hours on conditions consistent with those in place at the time of her redetention. Respondents shall file a notice with the Court within 48 hours that Petitioner has been released. Petitioner's remaining requests for injunctive relief are DENIED. Finally, any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 5th day of October, 2026.

S. Kate Vaughan

S. KATE VAUGHAN
United States Magistrate Judge